## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANINE BANKS, *et al.*,           :    Civil No. 3:19-CV-01617
:
        Plaintiffs,       :
:
        v.              :
:
ALLSTATE FIRE AND CASUALTY  :
INSURANCE COMPANY, and    :
ALLSTATE INSURANCE COMPANY, :
:
        Defendants.      :    Judge Jennifer P. Wilson

## MEMORANDUM

This is a putative class action regarding the payment of personal injury

benefits under Pennsylvania car insurance policies. Plaintiffs—an insured

individual from Pennsylvania and two New Jersey medical providers—allege that

Defendant insurance companies wrongfully applied a New Jersey fee schedule to

claims made under Pennsylvania insurance policies so as to underpay the claims.

The case is presently before the court on Defendants' motion to dismiss. For the

reasons that follow, the motion is granted in part and denied in part.

### PROCEDURAL HISTORY

This case was originally filed via a complaint in New Jersey state court on

November 12, 2018. (Doc. 1-1.) On December 12, 2018, Defendants removed the

case to the United States District Court for the District of New Jersey. (Doc. 1.)

Defendants moved to dismiss the complaint on February 28, 2019, after which

Plaintiffs filed an amended complaint. (Docs. 6, 9.) Defendants again moved to

dismiss on April 4, 2019, and the court granted the motion on May 14, 2019, dismissing the amended complaint without prejudice and allowing Plaintiffs to file a second amended complaint within 30 days.  (Docs. 15, 29.)

Plaintiffs filed a second amended complaint on June 13, 2019.  (Doc. 30.) Defendants filed a motion to dismiss the second amended complaint on July 10, 2019, arguing that the court should dismiss the second amended complaint for failure to state a claim upon which relief may be granted and for improper venue, or, in the alternative, transfer the case to the Middle District of Pennsylvania. (Doc. 32.)  The court granted the motion in part on September 18, 2019, transferring the case to this district and deferring consideration of the motion to dismiss for failure to state a claim to the transferee court.  (Docs. 44–45.)  The motion to dismiss and all associated briefs were accordingly refiled with this court following the transfer from the District of New Jersey.  (*See* Docs. 47–50.)

Upon being transferred, the case was initially assigned to United States District Judge Robert D. Mariani.  Judge Mariani set case management deadlines to govern the case on October 28, 2019.  (Doc. 60.)  The case was then reassigned to the undersigned pursuant to a verbal order from Chief United States District Judge Christopher C. Conner on November 15, 2019.  Following the reassignment, the court vacated the previously scheduled case management deadlines and

specified that new deadlines would be set, if necessary, upon the resolution of the Defendants' motion to dismiss.  (Doc. 65.)

## FACTUAL BACKGROUND

According to the allegations in the amended complaint, Plaintiff Janine Banks ("Banks") is a resident of Pennsylvania who maintained a car insurance policy with the Defendants in Pennsylvania.  (Doc. 30 ¶¶ 9–19.)  The policy[1] provided that the Defendants would pay first-party benefits for medical expenses, which were defined as follows:

9. **"Medical expenses"** means reasonable and necessary charges incurred for:

a) medical treatment, including but not limited to:

(1) medical, hospital, surgical, nursing and dental services;

(2) medications, medical supplies and prosthetic devices; and

(3) ambulance;

b) medical and rehabilitative services, including but not limited to:

---

[1] Although courts generally consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a motion to dismiss, *Pension Ben. Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.3d 1192, 1196 (3d Cir. 1993), courts "may also consider evidence 'integral to or explicitly relied upon'" in the complaint. *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).  Here, Banks's policy is integral to the Plaintiffs' claims, so the court will consider it in deciding the Defendants' motion to dismiss.

(1) medical care;

(2) licensed physical therapy, vocational rehabilitation
and occupational therapy;

(3) osteopathic, chiropractic, psychiatric and
psychological services; and

(4) optometric services, speech pathology and audiology;

c) nonmedical remedial care and treatment rendered in
accordance with a recognized religious method of healing.

(Doc. 48-2 at 27 (emphasis in original).)  The policy provided further guidance on

the payment of medical expenses in the "Customary Charges for Treatment"

section, which stated:

The amount **we** will pay a person or institution providing treatment,
accommodations, products or services to an **eligible person** for an
injury covered by **medical expense** benefits shall not exceed the
amount the person or institution customarily charges for like treatment,
accommodations, products and services in cases involving no
insurance.

(*Id.* at 30 (emphasis in original).)

Banks was involved in a car accident while she was covered by the policy

and suffered physical injuries.  (Doc. 30 ¶ 21.)  Following the accident, she

received treatment for her injuries from Plaintiff Spine Surgery Associates and

Plaintiff Ambulatory Surgical Center of Somerset (collectively referred to as

"Provider Plaintiffs"), both of which are New Jersey professional corporations.

(*Id.* ¶¶ 10–11, 23.)  No member of either professional corporation is licensed to practice in Pennsylvania.  (*Id.* ¶¶ 10–11.)

After receiving treatment from the Provider Plaintiffs, Plaintiff Banks filed a claim with the Defendants for medical benefits under her insurance policy.  (*Id.* ¶ 24.)  Defendants applied a New Jersey fee schedule to Banks's claim, which reduced the amount of money Defendants had to pay for the claim.  (*Id.* ¶¶ 5, 25.)  As a result of Defendants applying the New Jersey fee schedule to Banks's claim, Banks was forced to pay $74,618.14 that she would not otherwise have had to pay, Spine Surgery Associates received $44,837.13 less than it would have otherwise received, and Ambulatory Surgical Center of Somerset received $29,781.01 less than it would have otherwise received.  (*Id.* ¶¶ 34–36.)  The second amended complaint alleges that, rather than applying the New Jersey fee schedule, Defendants were obligated to pay Banks's "reasonable and necessary medical expenses as customarily charged by medical care providers for like treatment, accommodations, products, and services in cases involving no insurance."  (*Id.* ¶ 20.)

Plaintiffs purport to represent two classes of similarly situated plaintiffs.[2]

First, Plaintiffs assert that Plaintiff Banks represents a class of Pennsylvania

---

[2] Plaintiffs have not filed a motion for class certification under Federal Rule of Civil Procedure 23.

residents ("the insured class") that (1) were insured under car insurance policies issued by Defendants in Pennsylvania, (2) injured in car accidents in Pennsylvania, (3) received medical treatment for their injuries from medical providers outside of Pennsylvania who were not licensed to practice in Pennsylvania, and (4) had the payment of their claims reduced when the Defendants applied "auto medical payment fee schedules." (*Id.* ¶ 40.) Second, Plaintiffs assert that the Provider Plaintiffs represent a class of medical providers ("the health care provider class") that (1) treated at least one individual meeting the definition of the insured class, (2) were not licensed to practice in Pennsylvania, (3) filed a claim for benefits arising from the treatment of a member of the insured class, and (4) had the amount of the claim reduced by the Defendants' "application of an auto medical payment fee schedule." (*Id.*)

The second amended complaint raises eight counts: counts for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and violation of Pennsylvania's Insurance Bad Faith Act on behalf of Banks and the other members of the insured class; three counts for "payment of medical billing" on behalf of the Provider Plaintiffs and the other members of the health care provider class; and one count for unjust enrichment on behalf of the

Provider Plaintiffs and the other members of the health care provider class.  (*Id.* ¶¶ 57–143.)

<h2 align="center">JURISDICTION</h2>

This court has jurisdiction under 28 U.S.C. § 1332, which allows a district court to exercise subject matter jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.

Here, the citizenship requirement of § 1332 is met because the named Plaintiffs are citizens of Pennsylvania and New Jersey and the Defendants are citizens of Illinois.  As for the amount in controversy requirement, the amount in controversy in a case that is removed from state court on the basis of diversity jurisdiction is based on "the sum demanded in good faith in the initial pleading." 28 U.S.C. § 1446.  Here, Plaintiffs' initial complaint alleged that Banks suffered damages in the amount of $74,618.14 and sought treble damages under the UTPCPL. (Doc. 1-1 ¶¶ 30, 64.)  Treble damages are available under the UTPCPL, *see Nexus Real Estate, LLC v. Erickson*, 174 A.3d 1, 4 (Pa. Super. Ct. 2017), and are properly considered in computing the amount in controversy for purposes of diversity jurisdiction.  *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 401 (3d Cir. 2004).  Accordingly, the amount in controversy requirement is met

because Plaintiffs' initial complaint demanded damages of $74,618.14 and treble

damages in good faith.[3]

<h2 align="center">STANDARD OF REVIEW</h2>

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

*Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

---

[3] Because the court finds that it has diversity jurisdiction under 28 U.S.C. § 1332, the court will not analyze whether the Class Action Fairness Act provides a separate and independent basis for the court to exercise subject matter jurisdiction.

**DEFENDANTS' MOTION TO DISMISS**

Defendants raise eight arguments for dismissal. First, Defendants argue that the Plaintiffs' claims are untimely because the contract limitations period under Banks's insurance policy expired before the Plaintiffs filed their complaint. (Doc. 48 at 12–14.) Second, Defendants argue that Plaintiffs fail to state a claim for breach of contract because the second amended complaint does not identify which provision of Banks's policy was breached and does not allege the breach of any duty under the contract or any damages from such a breach. (*Id.* at 14–18.) Third, Defendants argue that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed because no cause of action for breach of the implied covenant of good faith and fair dealing exists under Pennsylvania law. (*Id.* at 19.) Fourth, Defendants argue that Plaintiffs' claim for violation of the UTPCPL should be dismissed because an insurer's alleged failure to pay a claim does not give rise to a claim under the UTPCPL. (*Id.* at 19–20.) Fifth, Defendants argue that Plaintiffs' bad faith claim fails because it is preempted by Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") and because the second amended complaint pleads insufficient facts to state a claim for bad faith. (*Id.* at 20–21.) Sixth, Defendants argue that all three claims for "payment of medical billing" should be dismissed because no such cause of action exists under Pennsylvania law. (*Id.* at 21–24.) Seventh, Defendants argue that

9

Plaintiffs' unjust enrichment claim fails because the parties' relationship was entirely governed by a written contract in the form of Banks's insurance policy and because Plaintiffs fail to plead the elements necessary for an unjust enrichment claim. (*Id.* at 24–25.) Finally, Defendants argue that all claims against Defendant Allstate Insurance Company should be dismissed because all of the Plaintiffs' claims are directed at Defendant Allstate Fire and Casualty Insurance Company, the entity that issued Banks's insurance policy. (*Id.* at 25.) The court will address the Defendants' dismissal arguments seriatim.

## DISCUSSION

### A. The Plaintiffs' Complaint Is Timely

Defendants' first argument for dismissal is that the Plaintiffs' claims are untimely under the terms of Banks's policy. (Doc. 48 at 12–14.) The policy states as follows:

> No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 2—First Party Benefits Coverage, unless there is full compliance with all policy terms. If benefits have not been paid, such action must be commenced within four years after the date of the accident. If benefits have been paid, such action must be commenced within four years after the date of the last payment.

(Doc. 48-2 at 48.)

A contractual provision modifying a limitations period is valid and legally enforceable under Pennsylvania law[4] as long as the limitations period is reasonable. *Mail Quip, Inc. v. Allstate Ins. Co.*, 388 F. Supp. 433, 438 (E.D. Pa. 2019) (citing *Lyons Nationwide Ins. Co.*, 567 A.2d 1100, 1102 (Pa. Super. Ct. 1989)). Here, neither party disputes that the case is governed by the four-year limitations period specified in the policy, *see* Doc. 48 at 12–14; Doc. 49 at 7–8, so the question of whether Plaintiffs' complaint is timely is governed by the language of the policy.

The fundamental goal in interpreting a contract under Pennsylvania law is to "ascertain and give effect to the intent of the parties." *Binswanger of Pa., Inc. v. TSG Real Estate LLC*, 217 A.3d 256, 262 (Pa. 2019) (citing *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001)). "When a contract is clear and unequivocal, its meaning must be determined by its contents alone." *Driscoll v. Arena*, 213 A.3d 253, 259 (Pa. Super. Ct. 2019) (quoting *N.E.A. Cross, Inc. v.*

---

[4] The parties appear to agree that Pennsylvania law governs this dispute, but the court has nonetheless conducted its own analysis under Pennsylvania's choice of law rules and determined that Pennsylvania law applies. *See LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996) ("In choosing which law applies, a federal court sitting in diversity must apply the choice-of-law rules of the forum state." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941))). Pennsylvania's choice of law rules focus on which state has the most significant relationship to the occurrence and the parties. *Melmark, Inc. v. Schutt ex rel. Schutt*, 206 A.3d 1096, 1107 (Pa. 2019). The plaintiffs' claims in this case arise from an accident in Pennsylvania involving a Pennsylvania resident and the subsequent claims she made on her Pennsylvania car insurance policy. With those facts in mind, the court concludes that Pennsylvania law applies.

*Nat'l Fuel Gas Supply Corp.*, 600 A.2d 228, 229 (Pa. Super. Ct. 1991)). A

contract is ambiguous under Pennsylvania law "if it is reasonably susceptible of

different constructions and capable of being understood in more than one sense."

*In re Somerset Regional Water Resources, LLC*, 949 F.3d 837, 845 (3d Cir. 2020)

(quoting *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008)).

Defendants argue that Plaintiffs' claims are untimely under the language of

Banks's policy because under the policy "any action related to the amount of

coverage must have been commenced within four years after the date of the last

payment to the Health Care Provider Plaintiffs." (Doc. 48 at 13.) Defendants note

that the last payments made to the Provider Plaintiffs occurred on February 25,

2013, and May 15, 2013, meaning that any actions against the Defendants had to

be brought no later than February 25, 2017 or May 15, 2017. (*Id.* at 13–14.)

Plaintiffs argue the Defendants' reading of the policy is wrong because it

erroneously reads the policy as requiring an action to be brought within four years

of a payment to a particular medical provider. (Doc. 49 at 7–8.) According to the

Plaintiffs, the policy requires only that an action be brought within four years of

the last payment made to *any* medical provider, it does not require an action to be

brought within four years of the last payment made to a specific provider. (*Id.*)

Under that reading of the policy, Plaintiffs argue their complaint was timely

because the last payment made under the policy was on November 7, 2014, and Plaintiffs commenced this suit on November 6, 2018. (*Id.* at 8.)

The court agrees with Plaintiffs' reading of the policy. When benefits have been paid, the clear and unambiguous language of the policy specifies that an action "must be commenced within four years after the date of the last payment." (Doc. 48-2 at 48.) Nothing in the policy requires that the last payment triggering the limitations period be made to a particular provider. (*See id.*) Accordingly, because Plaintiffs brought their complaint within four years after the last payment, the court finds that the Plaintiffs' complaint is timely. The motion to dismiss is therefore denied to the extent that it seeks to dismiss the complaint as untimely.

## B. Plaintiffs Fail to State a Breach of Contract Claim Upon Which Relief May Be Granted

The Defendants' second argument for dismissal is that Plaintiffs fail to state a claim for breach of contract. (Doc. 48 at 14–18.) Defendants first argue that Plaintiffs fail to allege which provision of Banks's policy was allegedly breached. (*Id.* at 14–15.) Further, even assuming that Plaintiffs properly identified the provisions that were allegedly breached, Defendants argue that they nonetheless fail to state a claim for breach of contract because the policy only requires Defendants to make payments that are reasonable and necessary. (*Id.* at 16–17.) Because Plaintiffs do not allege that the Defendants failed to make reasonable and

necessary payments, Defendants argue that the second amended complaint fails to state a claim for breach of contract. (*Id.*)

Defendants additionally note that Plaintiffs' breach of contract argument appears to be based on the Customary Charges for Treatment provision of the policy, which provides as follows:

> The amount we will pay a person or institution providing treatment, accommodations, products or services to an eligible person for an injury covered by medical expense benefits shall not exceed the amount the person or institution customarily charges for like treatment, accommodations, products and services in cases involving no insurance.

(Doc. 48-2 at 30.) That provision, Defendants argue, does not require them to make payments equal to the amount that is customarily charged; rather, it merely specifies that the amount the Defendants pay "shall not exceed" the amount that is customarily paid. (Doc. 48 at 17–18.) "There is nothing in the Banks Policy that restricts or limits Allstate's ability to pay less than the customarily charged amount for like treatment and services, so long as Allstate pays 'reasonable and necessary charges' incurred for medical treatment." (*Id.* at 18.) Thus, although Plaintiffs allege that Defendants improperly applied a New Jersey fee schedule to Banks's claims, Defendants argue the second amended complaint fails to state a claim for breach of contract because there is no allegation that payments based on the New

Jersey fee schedule constitute a breach of Defendants' duty to pay reasonable and necessary medical expenses. (*Id.* at 18.)

Plaintiffs argue they have pleaded a claim for breach of contract because Banks's policy required the Defendants to make payments in the amount customarily charged by healthcare providers, and, instead of doing so, Defendants applied the New Jersey fee schedule to reduce the amount that they had to pay. (Doc. 49 at 11–13.) Plaintiffs argue that the "measuring benchmark" for payment of medical expenses is "the medical providers['] own customary charges for like treatment and not a generic measure of fee schedule or other generic or providers generally." (*Id.* at 5.)

Defendants argue in response that the Plaintiffs' reading of the policy is wrong based on the clear and unambiguous language of the policy. (Doc. 50 at 9.) Rather than requiring Defendants to pay medical expenses equal to the amount customarily charged, Defendants argue, the policy states only that the amount paid "shall not exceed" the amount customarily charged. (*Id.* at 10.) Defendants note that Plaintiffs have not alleged that payments based on the New Jersey fee schedule are unreasonable, and that the Plaintiffs therefore fail to state a claim for breach of contract because the language of the contract only requires Defendants to make payments for reasonable and necessary charges. (*Id.*)

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *City of Allentown v. Lehigh Cty. Auth.*, 222 A.3d 1152, 1157 (Pa. Super. Ct. 2019) (quoting *Reformed Church of Ascension v. Theodore Hoover & Sons, Inc.*, 764 A.2d 1106, 1109 (Pa. Super. Ct. 2000)).

Here, the court finds Plaintiffs have failed to state a claim for breach of contract because they have not alleged the breach of any duty imposed by Banks's policy. The language of Banks's policy clearly and unambiguously requires Defendants only to pay reasonable and necessary medical expenses, Doc. 48-2 at 27, and Plaintiffs' second amended complaint does not allege that Defendants failed to make such reasonable and necessary payments. Plaintiffs argue that the policy requires the Defendants to make payments in the amount customarily charged by healthcare providers, *see* Doc. 49 at 15–17, but that argument runs contrary to the clear and unambiguous language of the policy, which specifies only that the payment made "shall not exceed" the amount customarily charged. (Doc. 48-2 at 30.) No provision of the policy requires Defendants to make payments in an amount equal to the amount customarily charged. (*See generally id.*)

Moreover, although Plaintiffs allege that Defendants improperly applied the New Jersey fee schedule to Banks's claims, *see* Doc. 30 ¶¶ 5, 25, they do not

allege that the application of that fee schedule resulted in payments that breached the Defendants' duty to pay for reasonable and necessary medical expenses. Therefore, because Plaintiffs fail to allege the breach of any duty imposed by Banks's policy, the court finds that Plaintiffs fail to state a breach of contract claim upon which relief may be granted. The court will, however, grant Plaintiffs leave to amend their breach of contract claim because amendment of the claim would be neither inequitable nor futile. *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 540 (M.D. Pa. 2018) (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 225 (3d Cir. 2008)).

### C. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Dismissed

Defendants argue Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed because Pennsylvania does not recognize such a cause of action. (Doc. 48 at 19.) Plaintiffs do not oppose this portion of the Defendants' motion to dismiss. (Doc. 49 at 20–21.) Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is dismissed with prejudice.

### D. Plaintiffs State a Claim for Violation of the UTPCPL

The court turns next to Defendants' argument that the claim for violation of the UTPCPL should be dismissed because an alleged failure to pay an insurance

claim does not give rise to a claim under that statute. (Doc. 48 at 19–20.) Plaintiffs argue that while nonfeasance—the failure to pay a claim—is not actionable under the UTPCPL, misfeasance—the improper performance of a contractual obligation—is actionable. (Doc. 49 at 21.) With that in mind, Plaintiffs argue they have stated a claim under the UTPCPL because they have alleged that Defendants improperly performed their obligation under Banks's policy by applying the New Jersey fee schedule to her claims. (*Id.* at 21–23.) Defendants argue in turn that the "fundamental premise" of Plaintiffs' suit is that the Defendants failed to pay benefits due under the policy. (Doc. 50 at 10–11.) Because such an action would constitute nonfeasance rather than misfeasance, Defendants argue Plaintiffs have not stated a claim under the UTPCPL. (*Id.*)

The UTPCPL bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa.C.S. § 201-3. Although a plaintiff may bring a claim against an insurer under the UTPCPL, "only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the UTPCPL, and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008) (quoting *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995)).

Here, Plaintiffs do not simply allege the failure to pay the full value of Banks's claims, they allege that the Defendants intentionally applied an improper standard—the New Jersey fee schedule—so as to reduce the amount they would pay on Banks's claims. (Doc. 30 ¶ 73.)

Several courts in this district have held that a complaint states a claim under the UTPCPL when it alleges that an insurer applied an improper standard so as to underpay an insured's claim. For example, in *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 632–33 (M.D. Pa. 2009), the court held that a complaint stated a claim under the UTPCPL where it alleged that an insurer had applied a definition of disability different from the standard specified in the insured's policy so as to deny the insured's claim for benefits. The court in *Zaloga* acknowledged that the failure to pay benefits would ordinarily constitute nonfeasance rather than misfeasance under the UTPCPL, but held that the allegations that the insurer had applied an improper standard "go beyond black or white performance and inject the question of the propriety of Defendants' behavior in performing their duty." *Id.* at 633; *see also, e.g.*, *Schlegel v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-CV-02190, 2012 WL 2885052, at *3 (M.D. Pa. July 13, 2012) (denying motion to dismiss where plaintiff alleged that insurance company used improper document requests to deny plaintiff's claim); *Rice v. State Farm Fire & Cas. Co.*, No. 4:10-CV-01280, 2010 WL 3398988, at *5 (M.D. Pa. Aug.

19

25, 2010) (denying motion to dismiss where plaintiff alleged that insurer knowingly took improper steps to deny a claim).

In line with those past decisions from courts in this district, the court finds that Plaintiffs sufficiently plead a claim under the UTPCPL because "it is plausible to view [the] facts in the light most favorable to [Plaintiffs] and conclude that Defendants misperformed their obligation to [Plaintiffs] rather than failed to perform it." *Zaloga*, 671 F. Supp. 2d at 633. Plaintiffs have alleged that Defendants improperly applied a New Jersey fee schedule so as to underpay Banks's claims, which is sufficient to allege misfeasance under the UTPCPL. *Id.*

Although the court concluded above that Plaintiffs fail to state a claim for breach of contract under Banks's policy, the instant conclusion regarding the Plaintiffs' UTPCPL claim is not inconsistent with that conclusion because the UTPCPL is based on misfeasance under the policy, rather than nonfeasance. That is, the UTPCPL claim alleges that Defendants improperly performed their duties under the contract, while the breach of contract claim alleges that Defendants failed to perform their duties under the contract. Thus, although Plaintiffs fail to state a claim for breach of contract because they fail to allege that Defendants breached their duty to pay reasonable and necessary medical expenses, their claim under the UTPCPL survives the Defendants' motion to dismiss because it alleges that Defendants intentionally applied an inapplicable standard—the New Jersey fee

schedule—so as to not pay reasonable and necessary medical expenses. Such a claim for misfeasance under a contract is actionable under the UTPCPL. *See, e.g.*, *Zaloga*, 671 F. Supp. 2d at 633. Whether it was actually improper to apply the New Jersey fee schedule and whether there are any facts to support the Plaintiffs' claims are questions best left for the summary judgment stage of litigation. At this stage, it is sufficient to conclude that Plaintiffs state a claim under the UTPCPL and accordingly deny the Defendants' motion to dismiss that claim.

### E. Plaintiffs' Statutory Bad Faith Claim Is Preempted by the MVFRL

The court will next address Defendants' argument that Plaintiffs' statutory bad faith claim under 42 Pa.C.S. § 8371 should be dismissed because it is preempted by the MVFRL. (Doc. 48 at 20–21.)

Section 8371 provides a cause of action for bad faith under an insurance policy. The statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.  The MVFRL provides a similar cause of action for bad faith claims arising from the nonpayment of medical expenses under an auto insurance policy: "A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO."[5]  75 Pa.C.S. § 1797(b)(4).  If the court determines "that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees."  *Id.* § 1797(b)(6).  "Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party."  *Id.* § 1797(b)(4).

Although the Pennsylvania Supreme Court has not ruled on whether § 8371 and § 1797 are in conflict, both the Pennsylvania Superior Court and the Third Circuit, predicting the Supreme Court's decision on a question of state law, have determined that the specific provisions of § 1797 preempt the general provisions of

---

[5] The MVFRL allows an insurer to challenge claim by presenting them to a peer review organization ("PRO") for the purpose of confirming that the claims conform "to the professional standards of performance and are medically necessary."  75 Pa.C.S. § 1797(b)(1).  The Defendants in this case did not challenge Banks's claim by presenting it to a PRO.  (Doc. 49 at 26.)

§ 8371.  *See Barnum v. State Farm Mut. Auto. Ins. Co.*, 635 A.2d 155, 159 (Pa. Super. Ct. 1993), *rev'd in part on other grounds*, 652 A.2d 1319 (Pa. 1994); *see also Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir. 1994).

Following the decisions in *Barnum* and *Gemini*, district courts in this circuit have split on the extent to which § 1797 preempts § 8371.  *See Metro. Grp. Prop. & Cas. Ins. Co. v. Hack*, 312 F. Supp. 3d 439, 446 (M.D. Pa. 2018) (collecting cases and providing relevant history of the district split).  While courts agree that § 1797 generally preempts § 8371 in claims for first-party benefits under the MVFRL, "[a] robust majority of courts have held that a Section 8371 claim is not preempted when an insurer's alleged malfeasance goes beyond the scope of Section 1797 or is obviously not amenable to resolution by the procedures set forth in Section 1797(b)."  *Id.*  Malfeasance claims that go beyond the scope of § 1797 may include "bad faith claims involving contract interpretation, an insurer's abuse or improper invocation of the PRO process, and disputes over causation."  *Id.*  On the other hand, "allegations of failure to pay first party benefits, investigate claims, act in a reasonable time and in good faith, fairly evaluate coverage, explain decisions, and effectuate a prompt and fair resolution of the claim are merely challenges to the reasonableness and necessity of the medical treatment" and are thus preempted by § 1797.  *Id.* at 447.

The Defendants in this case argue that the Plaintiffs' bad faith claim is preempted because it is predicated solely on the Defendants' failure to pay benefits under Banks's policy. (Doc. 48 at 20–21.)

Plaintiffs argue that the state of the law following *Barnum* and *Gemini* is "unsettled" and urge the court to find that their bad faith claim is not preempted on that basis. (Doc. 49 at 24.) Plaintiffs note that claims that go beyond the scope of § 1797 are not preempted, "such as claims involving contract interpretation or claims that the insurers did not properly invoke or follow the PRO process." (*Id.* at 24–25.) Plaintiffs then argue that a "prerequisite" for preemption is that the PRO process of § 1797 be invoked. (*Id.* at 25–27.) Here, since the Defendants did not follow the PRO process and did not deny benefits through the PRO process, Plaintiffs argue that their bad faith claim is not preempted. (*Id.* at 27.) Defendants respond that the PRO process is not a prerequisite for preemption and that Plaintiffs' bad faith claim is preempted because it is a claim for failure to pay first-party benefits. (Doc. 41 at 11–12.)

The court concludes that Plaintiffs' bad faith claim is preempted by the MVFRL. The facts of the case are indistinguishable from *McWalters v. State Farm Mut. Auto. Ins. Co.*, 10-CV-04289, 2011 WL 2937417, at *4–6 (E.D. Pa. July 21, 2011), where the Eastern District determined that the plaintiffs' bad faith claim was preempted by the MVFRL. In that case, like the present case, the

plaintiffs alleged the defendants wrongfully applied an inapplicable fee schedule so as to reduce the amount they would have to pay. *Id.* at *1. The court determined that the "the gravamen of Plaintiffs' bad faith claim is the denial of first party medical benefits and nothing more." *Id.* at *6. Thus, in line with *McWalters*, the court determines that Plaintiffs' bad faith claim represents a challenge to the denial of first-party medical benefits that is preempted by the MVFRL.

Plaintiffs' argument that invocation of the PRO process under § 1797 is a "prerequisite" for preemption is highly misleading and mispresents the relevant case law. The Plaintiffs' argument is based on three district court cases in which the court stated that a bad faith claim was not preempted where the PRO process was "not actually followed." *See Shea v. USAA*, No. 17-CV-04455, 2018 WL 3575261, at *8 (E.D. Pa. July 25, 2018); *Perkins v. State Farm Ins. Co.*, 589 F. Supp. 2d 559, 565 (M.D. Pa. 2008); *Schwartz v. State Farm Ins. Co.*, No. 96-CV-00160, 1996 WL 189839, at *4 (E.D. Pa. Apr. 18, 1996). Based on that language, Plaintiffs argue that preemption does not apply unless the PRO process under § 1797 is invoked. (Doc. 49 at 25–27.) But that is not what *Shea*, *Perkins*, or *Schwartz* stated. All three of those cases concerned claims that were ostensibly submitted to PROs for independent review, but in actuality involved alleged abuse of the PRO process by the insurers. *See Shea*, 2018 WL 3575261, at *9; *Perkins*, 589 F. Supp. 2d at 565–66; *Schwartz*, 1996 WL 189389, at *4. Thus, *Shea*,

*Perkins*, and *Schwartz* stand for the proposition that a bad faith claim is not preempted when an insurer nominally invokes, but does not properly follow, the PRO process. The cases do not, as Plaintiffs argue, stand for the proposition that a bad faith claim can only be preempted by the MVFRL when the PRO process is invoked. Accordingly, Plaintiffs' argument does not alter the court's conclusion that the Plaintiffs' bad faith claim is preempted by the MVFRL. Plaintiffs' bad faith claim is therefore dismissed with prejudice because it is preempted by the MVFRL.

### F. Plaintiffs' Claims for Payment of Medical Billing Fail to State a Claim Upon Which Relief May Be Granted

In their motion to dismiss, Defendants argue that Plaintiffs' three claims for "payment of medical billing" should be dismissed because no cause of action for payment of medical billing exists under Pennsylvania law. (Doc. 48 at 21–23.) Plaintiffs argue that their claims for payment of medical billing should be allowed to proceed because the MVFRL allows a medical provider to bring a private cause of action against an insurer for unpaid medical bills. (Doc. 49 at 34–39.)

Plaintiffs are correct that the MVFRL allows a medical provider to bring a private cause of action against an insurer for unpaid medical bills. *See* 75 Pa.C.S. § 1797; *see also Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1186 (Pa. 2007). Plaintiffs' claims for payment of medical billing, however, do not state a

claim under the MVFRL.  Plaintiffs do not cite to the relevant provision of the MVFRL—75 Pa.C.S. § 1797—anywhere in their three claims for payment of medical billing, nor do they otherwise cite or mention the MVFRL.  (*See* Doc. 30 ¶¶ 87–133.)  Without any such citation or mention of the MVFRL, Plaintiffs' claims appear to be freestanding claims for "payment of medical billing," which, as Defendants correctly note, is not a cause of action under Pennsylvania law. Thus, as currently pleaded, Plaintiffs' claims for payment of medical billing fail to state a claim upon which relief may be granted.  The court will therefore dismiss the Plaintiffs' claims for payment of medical billing without prejudice and grant Plaintiffs leave to amend their complaint to attempt to state a claim under the MVFRL.

### G. Plaintiffs Fail to State a Claim for Unjust Enrichment

The court will next analyze Defendants' argument that Plaintiffs' unjust enrichment claim should be dismissed.  Defendants argue that the unjust enrichment claim, which is pleaded only on behalf of the Provider Plaintiffs and other members of the health care provider class, should be dismissed because the parties' relationship is governed by a written contract, and because the Plaintiffs fail to plead the elements necessary to state a claim for unjust enrichment.  (Doc. 48 at 24–25.)

To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege (1) that the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be inequitable to do so without paying for the benefit. *Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. Ct. 2019). A plaintiff cannot recover for unjust enrichment where the parties' relationship is governed by a written contract. *Heldring v. Lundy Beldecos & Milby, P.C.*, 151 A.3d 634, 645 (Pa. Super. Ct. 2016) (citing *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. Ct. Sept. 18, 2007)).

In this case, the court finds that Plaintiffs fail to state a claim for unjust enrichment upon which relief may be granted because they have not alleged that the Provider Plaintiffs conferred any benefit upon the Defendants. Plaintiffs argue that they adequately allege the conferral of a benefit because they allege that Defendants received premium payments under Banks's policy. (Doc. 49 at 31–34.) As Plaintiffs acknowledge, however, the premium payments were made by Banks, not the Provider Plaintiffs. (*Id.* at 32 ("Plaintiff[s] have alleged that Insured Plaintiffs paid insurance premiums to Allstate in exchange for policies that would pay medical benefits in the event that the Plaintiffs sustained injuries as a result of motor vehicle accidents.")) Accordingly, because Plaintiffs fail to allege that the

Provider Plaintiffs conferred a benefit on the Defendants, they fail to state an unjust enrichment claim upon which relief can be granted. The motion to dismiss is therefore granted to the extent it seeks the dismissal of Plaintiffs' unjust enrichment claim. However, because amendment of the Plaintiffs' unjust enrichment claim would be neither inequitable nor futile, the dismissal is without prejudice to Plaintiffs amending their unjust enrichment claim. *See Navient Corp.*, 354 F. Supp. 3d at 540.

## H. Claims Against Allstate Insurance Company

In their final argument for dismissal, Defendants argue that all claims against Defendant Allstate Insurance Company should be dismissed because Defendant Allstate Fire and Casualty Insurance Company is the real party in interest as the entity that issued Banks's insurance policy. (Doc. 48 at 25.) Plaintiffs do not raise any arguments in opposition to this argument. (*See generally* Doc. 49.) Accordingly, the court will grant the motion to dismiss insofar as it seeks the dismissal of all claims against Defendant Allstate Insurance Company.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 47) is granted in part and denied in part. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 13, 2020